[Cite as *Ohi-Rail v. Barnett*, 2010-Ohio-1549.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| OHI-RAIL CORPORATION, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 09-JE-18 |
| | ) | |
| THOMAS BARNETT, ET AL., | ) | OPINION |
| | ) | |
| DEFENDANTS-APPELLANTS. | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from Court of Common Pleas of Jefferson County, Ohio Case No. 08CV386

JUDGMENT:    Affirmed

APPEARANCES:
For Plaintiff-Appellee    Attorney Shawn M. Blake
4110 Sunset Blvd.
Steubenville, Ohio 43952

For Defendants-Appellants    Attorney Edward F. Siegel
27600 Chagrin Blvd. #340
Cleveland, Ohio 44122

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: March 31, 2010

DONOFRIO, J.

**{¶1}** Defendants-appellants Thomas and Florence Barnett (the Barnetts) appeal the denial of their motion for relief from a default judgment awarded in favor of plaintiff-appellee Ohi-Rail Corp. which resulted in a monetary damage award of $174,889.20.

**{¶2}** On June 27, 2008, Ohi-Rail sued the Barnetts for breach of fiduciary duty, fraud, accounting, conversion, theft of mail, defamation, and tortious interference with business. Thomas Barnett was employed as the general manager of Ohi-Rail and is a minority shareholder. Thomas' wife, Florence, was also employed by Ohi-Rail. Ohi-Rail accused the Barnetts of misappropriating the company's money and assets. They allegedly conspired between themselves and with others to conceal the theft of corporate records, tools, office equipment, and railroad supplies. Ohi-Rail also accused the Barnetts of mismanagement, using the company's phone to make costly international phone calls, and posting libelous statements against Ohi-Rail on internet message boards.

**{¶3}** The Barnetts refused service by certified mail on July 2, 2008, and ordinary mail on July 11, 2008. After the Barnetts failed to answer, Ohi-Rail moved for default judgment. The Barnetts also refused service of Ohi-Rail's default judgment motion.

**{¶4}** On August 18, 2008, the trial court granted the motion for default judgment. The court noted that Ohi-Rail had filed its complaint on June 27, 2008, and that the Barnetts had refused service by certified mail on July 2, 2008. The court also noted that the Barnetts were served by regular mail (despite their refusal to accept the mailings) as evidenced by the clerk of courts having filed a "Certificate of Mailing" on July 9, 2008, pursuant to Civ.R. 4.6(C) (governing methods of service when service is refused). The court noted the Barnetts' refusal to accept service of the default judgment motion, their failure to plead or otherwise defend the action, and proceeded to grant default judgment in Ohi-Rail's favor and set a hearing to determine damages.

**{¶5}** Following the hearing on damages and on September 2, 2008, the court awarded Ohi-Rail $174,889.20 in damages plus postjudgment interest and court costs. The Barnetts refused service of both court orders.

**{¶6}** On November 18, 2008, proceedings in aid of execution were instituted on the affidavit of Ohi-Rail's attorney, and the Barnetts were ordered to submit to an examination as judgment debtors on December 8, 2008. Apparently, the Barnett's appeared in court for the debtor's exam and Thomas acknowledged possessing five shares of Ohi-Rail stock. Thereafter, the court granted Ohi-Rail's motion for attachment of the Barnetts' property other than personal earnings, specifically the five shares of Ohi-Rail stock held by them.

**{¶7}** On December 16, 2008, the court was served notice that Thomas Barnett had filed a pro se affidavit of disqualification in the Ohio Supreme Court on December 11, 2008, seeking to have Judge Bruzzese removed from the case. He alleged that Judge Bruzzese had served as legal counsel for Ohi-Rail between 1990 and 1992. The following day, Judge Bruzzese signed an order transferring the case to Judge Henderson. Consequently, the Ohio Supreme Court subsequently dismissed the affidavit of disqualification as moot.

**{¶8}** On December 31, 2008, Ohi-Rail filed a motion to compel the Barnetts to produce the five shares of Ohi-Rail stock. Apparently, the sheriff's department went to retrieve them from the Barnetts and Thomas claimed he could no longer find them and provided only a photocopy of one of them.

**{¶9}** On January 8, 2009, the court was served notice that Thomas had filed a pro se affidavit of disqualification in the Ohio Supreme Court on January 5, 2009, this time seeking to have Judge Henderson removed from the case. Thomas implied that Judge Henderson could not issue any orders in aid of execution of the judgment since the judgment that had been entered by Judge Bruzzese was improper due to his bias stemming from his having served as counsel for Ohi-Rail. Thomas further asserted that having the case heard in Jefferson County and presided over by any of its judges created an appearance of impropriety since Ohi-Rail's vice president was a

former county commissioner and its majority shareholder had an ownership stake in many Jefferson County businesses and was heavily involved in the community and politics. The Ohio Supreme Court subsequently denied the affidavit of disqualification, characterizing Thomas' allegations as vague and unsubstantiated.

{¶10} The court heard Ohi-Rail's motion to compel on January 12, 2009. The Barnetts appeared without counsel. The court ordered Thomas to execute an "Affidavit of Lost Stock Certificate" as well as a duplicate Ohi-Rail stock certificate signifying the transfer of his five shares to Ohi-Rail. The court then set the matter for stock valuation for January 26, 2009.

{¶11} On January 26, 2009, Ohi-Rail appeared through its attorney and the Barnetts again appeared without counsel. The court determined the value of the five shares of Ohi-Rail stock at $15,300.00 and deducted that amount from the default judgment of $174,889.20.

{¶12} Over two months later on April 2, 2009, the Barnetts, now represented by counsel, filed a Civ.R. 60(B)(5) motion for relief from the default judgment entered on August 18, 2008. The only reason they advanced to set aside that judgment was because it had been entered by Judge Bruzzese who had represented Ohi-Rail in the past, calling into question his impartiality.

{¶13} Judge Henderson held a hearing on the motion on April 13, 2009, and in an entry filed the following day, overruled the motion finding that there was no valid reason to justify the requested relief. This appeal followed.

{¶14} The Barnetts raise three assignments of error. The Barnett's first assignment of error states:

{¶15} "THE FIRST TRIAL COURT JUDGE ERRED WHEN HE FAILED TO RECUSE HIMSELF IMMEDIATELY UPON LEARNING THE IDENTITY OF THE PARTIES TO THE DISPUTE."

{¶16} The Barnetts argue that Judge Bruzzese should have recused himself from this case when he learned the identity of the litigants. The Barnetts argue that Judge Bruzzese's representation of Ohi-Rail before becoming a judge called into

question his impartiality and required him to recuse in accordance with the Code of Judicial Conduct Canon 3(E)(1). Since he did not recuse himself until after entering default judgment against them, they contend that judgment was in error and must be set aside.

{¶17} In response, Ohi-Rail argues that prior representation of a party by a judge on matters wholly unrelated to matters presently before the judge does not mandate judicial disqualification, absent a specific showing of actual bias on the part of the judge. Ohi-Rail points out that Canon 3(E)(1)(b) of the Code of Judicial Conduct requires a judge to be disqualified only if they "served as a lawyer in the matter in controversy." Since Judge Bruzzese did not serve as the lawyer in the present matter and served as its counsel over seventeen years ago, Ohi-Rail maintains that Judge Bruzzese was not required to recuse himself. Ohi-Rail also argues that his ruling on its motion for default judgment was perfunctory and did not present the opportunity for an exercise of discretion.

{¶18} Indeed, it has been held that "[p]rior representation of a party by a judge * * * on matters wholly unrelated to matters presently pending before the judge does not mandate judicial disqualification, absent a specific showing of actual bias on the part of the judge." *In re Disqualification of Rothgery*, 117 Ohio St.3d 1250, 1251, 2005-Ohio-7152, 885 N.E.2d 245. Here, the Barnetts failed to make a specific showing of actual bias on the part of the trial court judge.

{¶19} Nonetheless, a party cannot use a Civ.R. 60(B) motion for relief from judgment as a substitute for a timely appeal or as a means to extend the time for filing an appeal from the original judgment. *Key v. Mitchell* (1998), 81 Ohio St.3d 89, 90-91, 689 N.E.2d 548. In discussing the reason for not allowing such appeals, the Ohio Supreme Court has stated:

{¶20} "Such procedural devices cannot be used in order to obtain review of a judgment where a timely appeal was not filed. If we were to hold differently, judgments would never be final because a party could indirectly gain review of a judgment from which no timely appeal was taken by filing a motion for

reconsideration or a motion to vacate judgment." *State ex rel. Durkin v. Ungaro* (1988), 39 Ohio St.3d 191, 193, 529 N.E.2d 1268.

**{¶21}** In this case, the trial court entered default judgment on August 18, 2008. The Barnetts waited over seven and a half months before filing their Civ.R. 60(B) motion on April 2, 2009. They did not file a notice of appeal until May 8, 2009, after the trial court overruled their motion for relief from judgment. While the Barnetts' notice of appeal perfected an appeal from the court's April 14, 2009 judgment overruling their Civ.R. 60(B) motion, it was untimely as to the August 18, 2008 judgment entry.

**{¶22}** Accordingly, for all the foregoing reasons, the Barnetts' first assignment of error is without merit.

**{¶23}** The Barnetts' second assignment of error states:

**{¶24}** "THE TRIAL COURT ERRED WHEN THE SECOND JUDGE RULED THAT HE LACKED DISCRETION TO VACATE THE DEFAULT JUDGMENT ISSUED BY THE FIRST JUDGE WHO HAD THE OBVIOUS CONFLICT OF INTEREST[.] (TR. AT 5, LINES 4-9; AT 20, LINES 4-10)"

**{¶25}** The Barnetts take issue with the following comments made by the trial court during the hearing on their motion for relief from judgment:

**{¶26}** "THE COURT: However, I will note that there was -- there was a motion for default judgment that was granted, so I don't see where there is any discretion that the Court would have had to use. All the Court would have looked at would have been was there an answer filed or wasn't there an answer filed." (04/13/2009 Hearing, Tr. 5.)

**{¶27}** "THE COURT: If there had been any discretion involved in that decision, then I might be inclined to agree with you. Judge Bruzzese was ruling solely upon the record, upon whether there had been service, upon whether there had been an answer, whether it had been timely on that basis." (04/13/2009 Hearing, Tr. 20.)

**{¶28}** It is clear form these comments that the second trial court judge (Judge Henderson) was not referring to his own discretion in ruling on the Barnetts' motion for relief from judgment but rather to the discretion of the first trial court judge (Judge Bruzzese) in ruling upon Ohi-Rail's motion for default judgment. Ohi-Rail sued the Barnetts. The Barnetts continually refused service and failed to file an answer. Consequently, there was nothing left for the first trial court judge to do but to enter default judgment against them. Although a trial court is generally vested with discretion in deciding whether to grant default judgment, the facts and circumstances of this case left little or no discretion to the first trial court judge. He simply had to enter judgment since it was obvious that the Barnetts were not going to appear and defend themselves.

**{¶29}** Accordingly, the Barnetts' second assignment of error is without merit.

**{¶30}** The Barnetts' third assignment of error states:

**{¶31}** "THE COURT ERRED WHEN THE SECOND JUDGE FAILED TO ANALYZE APPELLANT'S MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO THE HOLDING OF *GTE AUTOMATIC ELECTRIC, INC. vs. ARC INDUSTRIES (1976) 47 Oh St. 146. (TR. AT 5).*"

**{¶32}** A trial court may only grant relief from judgment in the manner provided by Civ.R. 60. *In re Estate of Dotson*, 7th Dist. No. 01-CA-97, 2002-Ohio-6889, at ¶18. The standard of review used to evaluate the trial court's decision to deny or grant a Civ.R. 60(B) motion is abuse of discretion. *Preferred Capital, Inc. v. Rock N Horse, Inc.*, 9th Dist. No. 21703, 2004-Ohio-2122, at ¶9. "'Abuse of discretion' means unreasonable, arbitrary, or unconscionable." *State ex rel. Cranford v. Cleveland*, 103 Ohio St.3d 196, 2004-Ohio-4884, 814 N.E.2d 1218, ¶24.

**{¶33}** The Ohio Supreme Court set out the controlling test for Civ.R. 60(B) motions in *GTE Automatic Elec., Inc. v. Arc Industries, Inc.* (1976), 47 Ohio St.2d 146, 351 N.E.2d 113. The court stated:

**{¶34}** "To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief

is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." Id. at paragraph two of the syllabus.

**{¶35}** The grounds for relief under the second *GTE* element are:

**{¶36}** "(1) [M]istake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment." Civ.R. 60(B).

**{¶37}** The Barnetts' argue that the trial court did not analyze their Civ.R. 60(B) motion for relief from judgment under the requirements set forth in *GTE.* Indeed, the trial court's judgment entry does not specifically indicate consideration of the three elements set forth in *GTE.* The entry simply stated that there are no valid reasons for granting relief under Civ.R. 60(B)(5). The court reasoned that the Barnetts' "various attempts to avoid service * * * do not constitute valid reasons for relief as there was proper service and no irregularities in the granting of the default exist." However, a review of the transcript of the April 13, 2009 hearing reveals that the Barnetts' motion was presented and heard within the context of the three requirements set forth in *GTE.* The court specifically allowed each side to address each of the requirements; although, the hearing focused primarily on *GTE*'s second prong – whether the Barnetts were entitled to relief under Civ.R. 60(B)(5)'s catch-all provision. The court's subsequent entry denying the motion simply reflects the direction that discourse took and the main reason for which the court believed the Barnetts had not met the *GTE* test.

**{¶38}** Turning to an application of *GTE* to this case, the Barnetts maintain that they were prepared to testify as to meritorious defenses to Ohi-Rail's claims, that they were entitled to relief under Civ.R. 60(B)(5)'s catch-all provision because of Judge Bruzzese's conflict of interest, and that their motion for relief from judgment was timely.

**{¶39}** As to *GTE*'s first prong, it appears that Thomas Barnett was prepared to testify to various defenses to Ohi-Rail's claims and counterclaims of his own. For example, the Barnetts' attorney disputed Ohi-Rail's claim that Thomas had stolen company equipment. Apparently, Thomas alleges that the equipment was his and that he loaned it to the company. (Tr. 9.) He claims that Ohi-Rail has wrongfully continued to use the equipment following his dismissal without paying him rent. (Tr. 10.) As for the phone bills, Thomas maintains that he had been repaying the company for those charges on a monthly basis until he was fired. (Tr. 9-10.) The Barnetts claim that Thomas was not allowed to testify as to these defenses and counterclaims.

**{¶40}** A thorough review of the hearing transcript does not support the Barnetts' argument on this issue. Although Thomas did not testify, the trial court did not specifically disallow Thomas to testify concerning his defenses and counterclaims. Moreover, the Barnetts' attorney was given ample opportunity to present arguments concerning the *GTE*'s first prong and proceeded to do so. Ohi-Rail characterizes the court's treatment of the first prong as an outright rejection of the Barnetts' proposed defenses and counterclaims. Rather, as discussed earlier, the focus of the hearing shifted to the perceived absence of *GTE*'s second prong.

**{¶41}** Turning to the second prong, whether the Barnetts are entitled to relief under Civ.R. 60(B)(5)'s catch-all provision – "any other reason justifying relief from the judgment" – is the pivotal question in this case. The Barnetts contend that Judge Bruzzese's prior representation of Ohi-Rail mandated recusal rendering his entry of default judgment ineffective and unlawful.

**{¶42}** Civ.R. 60(B)(5)'s catch-all provision is to be used sparingly only when the grounds are substantial. *Caruso-Ciresi, Inc. v. Lohman* (1983), 5 Ohio St.3d 64, 66, 448 N.E.2d 1365. See, also, Staff Note to Civ.R. 60(B)(5) (providing fraud upon the court as an example; more specifically, the bribing of a juror, not by the adverse party, but by some third person).  Pertinent to this prong, it should again be pointed out here that it has been established that Civ.R. 60(B) is not a substitute for a direct appeal of the judgment. *Key v. Mitchell* (1998), 81 Ohio St.3d 89, 90-91, 689 N.E.2d 548; *Doe v. Trumbull Cty. Child. Serv. Bd.* (1986), 28 Ohio St.3d 128, 131, 28 OBR 225, 502 N.E.2d 605. See, also, *Colley v. Bazell* (1980), 64 Ohio St.2d 243, 245, 18 O.O.3d 442, 416 N.E.2d 605.  Moreover, the rule cannot be used to circumvent or extend the time for filing an appeal. *Blasco v. Mislik* (1982), 69 Ohio St.2d 684, 686, 23 O.O.3d 551, 433 N.E.2d 612.

**{¶43}** The Barnetts contend that Judge Bruzzese's prior representation of Ohi-Rail was reason enough to constitute "any other reason justifying relief from the judgment."  Concerning Judge Bruzzese's prior representation of Ohi-Rail, the Barnetts rely on Canon 3(E)(1) of the Code of Judicial Conduct.  At the time Judge Bruzzese presided over this case, Canon 3(E)(1) of the Code of Judicial Conduct governed disqualification of judges and provided that:

**{¶44}** "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

**{¶45}** ("a) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding;

**{¶46}** "(b) The judge served as a lawyer in the matter in controversy, a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge has been a material witness concerning the matter;

{¶47} "(c) The judge knows that he or she, individually or as a fiduciary, or the judge's spouse, parent or child wherever residing, or any other member of the judge's family residing in the judge's household, has an economic interest in the subject matter in controversy or in a party to the proceeding or has any other more than a *de minimis* interest that could be substantially affected by the proceeding;

{¶48} "(d) The judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

{¶49} "(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

{¶50} "(ii) Is acting as a lawyer in the proceeding;

{¶51} "(iii) Has acted as a judge in the proceeding;

{¶52} "(iv) Is known by the judge to have an economic interest that could be substantially affected by the proceeding;"

{¶53} "(v) Is to the judge's knowledge likely to be a material witness in the proceeding."[1]

{¶54} On their face, subsections (c) and (d) of Canon 3(E)(1) have no application to this case. Instead, the only subsections of relevance in this case are (a) and (b).[2] The Barnetts' main contention is that Judge Bruzzese's impartiality was called into question because of his prior representation of Ohi-Rail. However, as Canon 3(E)(1)(b) makes clear, a judge is required to disqualify themselves only if they "served as a lawyer in the matter in controversy." Here, Judge Bruzzese did *not* serve as a lawyer in the matter in controversy. He ceased his representation of Ohi-Rail over seventeen years ago. Therefore, Judge Bruzzese was not required to disqualify himself based on his prior representation of Ohi-Rail since he did not serve as a lawyer in any matters that led to the present controversy.

{¶55} Canon 3(E)(1)(a) requires a judge to disqualify themselves if they have "a personal bias or prejudice concerning a party or a party's lawyer." Also, caselaw

---

1. These Canons were superseded by a new Code of Judicial Conduct on March 1, 2009.
2. Subsections (a) and (b) of Canon 3(E)(1) are now found in Jud. Cond. Rule 2.11(A)(1) and (7)(a), respectively.

provides that "[p]rior representation of a party by a judge * * * on matters wholly unrelated to matters presently pending before the judge does not mandate judicial disqualification, absent a specific showing of actual bias on the part of the judge." *In re Disqualification of Rothgery*, 117 Ohio St.3d 1250, 1251, 2005-Ohio-7152, 885 N.E.2d 245. Here, the Barnetts have failed to show any actual bias or prejudice on the part of Judge Bruzzese. As already indicated, he did not serve as a lawyer in any of the matters that led to the present controversy and it had been over seventeen years since Judge Bruzzese last represented Ohi-Rail. Without more evidence, prior representation of a party over seventeen years ago by itself is simply not enough to demonstrate actual bias or prejudice. The Barnetts have failed to elucidate any specific facts that would establish that Judge Bruzzese was biased or prejudiced against them. In the absence of any specific facts establishing that Judge Bruzzese was biased or prejudiced against the Barnetts, Judge Bruzzese was not required to disqualify himself under Canon 3(E)(1)(a).

{¶56} Importantly, there was little to no opportunity for Judge Bruzzese to exercise any prejudice or bias against the Barnetts, or for which his impartiality might reasonably be questioned. Ohi-Rail sued the Barnetts. They continually and repeatedly refused service and failed to file an answer. Consequently, there was nothing left for Judge Bruzzese to do but to enter default judgment against them. Although a trial court is generally vested with discretion in deciding whether to grant default judgment, the facts and circumstances of this case left little or no discretion to Judge Bruzzese. He simply had to enter judgment since it was obvious that the Barnetts were not going to appear and defend themselves. In sum, the filing of their motion for relief from judge four months after they first appeared in court and nine months after they refused service of the complaint was an attempt to substitute for a direct appeal of the judgment and did not present substantial grounds for relief.

{¶57} Accordingly, the Barnetts' third assignment of error is without merit.

**{¶58}** The judgment of the trial court is affirmed.

Vukovich, P.J., concurs.

Waite, J., concurs.